UNITED STATES DISTRICT COURT
EASTERN DISTCT OF MICHIGAN
SOUTHERN DIVISION

ALYCIA ROBERTS on behalf
of JW, a Minor,

        Plaintiff,        Civil Action No.: 14-13194
                                  Honorable Denise Page Hood
        v.                  Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 19, 20]

    Plaintiff Alycia Roberts appeals a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application, on behalf of her minor son, J.W., for Supplemental Security Income benefits ("SSI"). Both parties have filed summary judgment motions, referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Court finds that the administrative law judge ("ALJ") did not satisfy his duty to properly develop the record in light of Roberts' *pro se* status, the ALJ's representations at the hearing, and the insufficiency of the opinion received from J.W.'s treating psychiatrist. For

these reasons, the Court **RECOMMENDS** that:

- the Commissioner's motion [R. 20] be **DENIED**;

- Roberts's motion [R. 19] be **GRANTED;** and,

- the Commissioner's decision be **REMANDED** for further consideration, pursuant to sentence four of 42 U.S.C. § 405(g).

I.    BACKGROUND

  A.    Claimant's Background and Alleged Impairments

J.W. is an eight-year-old boy who had previously received social security benefits through 2011, though the circumstances under which those benefits were granted is unclear. [R. 12-2, Tr. 44-45]. When the benefits were terminated, (aqain for reasons unclear), his mother filed a new application, alleging he was disabled as of November 22, 2011, due to attention deficit hyperactivity disorder ("ADHD") and oppositional defiant disorder ("ODD"). [R. 12-5, Tr. 101-106; R. 12-6, Tr. 109-114].

  B.    Procedural History

Roberts's claim was denied initially, and she filed a timely request for an administrative hearing, held on October 19, 2012. [R. 12-2, Tr. 35-61; R. 12-4, 77-83]. At the hearing, the ALJ asked Roberts if she wished to proceed without counsel, and obtained her waiver. [R. 12-2, Tr. 39-40]. He then took her testimony, but did not take any testimony from J.W.. [*Id.,* Tr.

54]. The ALJ left the record open and offered to obtain additional treatment information for J.W. before rendering a decision. [*Id.*, Tr. 49, 52, 58-60]. In a February 7, 2012 written decision, the ALJ found J.W. not disabled. [*Id.*, Tr. 17-34]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.*, Tr. 9-14]. Roberts timely filed for judicial review. [R. 1; R. 12-2, Tr. 1-3].

### C. The ALJ's Application of the Disability Framework

SSI is available for children who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner determines whether an child is disabled by analyzing three sequential steps, assessing: (1) whether the child is engaged in "substantial gainful activity"; (2) whether the child has a "severe" impairment;[1] and (3) whether the child's impairment meets, medically equals, or functionally equals an impairment listed in 20 C.F.R.

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 1520(c); 920(c).

3

Part 404, Subpart P, Appendix 1 ("Listings"). *See* 20 C.F.R. §416.924(a). Functional equivalence is demonstrated by the existence of an "extreme" limitation in one of six domains, or a "marked" limitation in two of the six. 20 C.F.R. § 4156.926a(d). An extreme limitation is one that interferes "very seriously" with a claimant's ability to independently initiate, sustain and/or complete activities. 20 C.F.R. § 416.926a)(e)(3)(i). A "marked" limitation exists where the impairment interferes "seriously" with these abilities. 20 C.F.R. § 416.926a(e)(2)(i). If the impairment or combination of impairments does not meet or medically or functionally equal a listing, the child is not disabled. 20 C.F.R. §416.924(a).

 Applying this framework, the ALJ concluded that J.W. was not disabled. At step one, he determined that J.W. had not engaged in substantial gainful activity since his alleged onset date. [R. 12-2, Tr. 23]. At step two, the ALJ identified severe impairments of ADHD and ODD. [*Id.*]. At step three, the ALJ found that neither of J.W.'s severe impairments, either alone or in combination, met or medically equaled a listed impairment. [*Id.*, Tr. 24]. He further found that neither of J.W.'s impairments functionally equaled a listed impairment. [*Id.*]. In making this finding, the ALJ determined that J.W. had marked limitations in the domain of attending and completing tasks, less than marked limitations in the

4

domains of acquiring and using information, interacting and relating with others and caring for yourself, and no limitations in the domains of moving about and manipulating objects or health and physical well-being. [*Id.*, Tr. 24-30]. As a result, J.W. was not disabled. [*Id.*, Tr. 30].

## II. STANDARD OF REVIEW

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal

citations omitted).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards. "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry*, 741 F.3d at 723. *See also Rogers*, 486 F.3d at 249. In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56. On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless. *Id.*; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011); *Gentry*, 741 F.3d at 729. An "ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the

ALJ may be justified based upon the record." *Cole*, 661 F.3d at 939-40 (internal quotation marks and citation omitted).

With these standards in mind, this Court finds that the ALJ's determination that J.W. is not disabled is not supported by substantial evidence.

### III.   ANALYSIS

#### A.   Roberts's Brief

As a preliminary matter, the Court addresses Roberts's *pro se* brief, which primarily argues against J.W.'s prior termination of benefits. Roberts needs to be aware that the issue of benefits termination is not presently before this Court. This Court has jurisdiction only to address whether or not substantial evidence supports the ALJ's decision that J.W. was not disabled between November 22, 2011, the date of his current application for benefits, and the date of the ALJ's decision. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date."); *Ellis v. Comm'r of Soc. Sec.*, No. 1:13-CV-870, 2014 WL 6387145, at *6 (W.D. Mich. Nov. 14, 2014) (relevant period for judicial review of denial of SSI benefits is date of application until ALJ decision). Most of Roberts's arguments are inapposite to this issue.

7

Roberts also argues that the ALJ held her lack of representation at the hearing against her, but the Court disagrees.  Roberts claims that the ALJ made a statement that he was going to go with his "gut" instead of the facts.  This statement is taken out of context.  The ALJ actually stated that he was going to go with his gut in obtaining more records on the issue of J.W.'s ability to function, including either obtaining an evaluation form from his treating psychiatrist or sending him out for a consultative exam.  [R. 12-2, Tr. 48-49, 52, 58-60].  The transcript reflects a consistent attempt on the part of the ALJ to explain the process to Roberts and the reasons he felt he needed more information than what she had provided.  [*Id.*].

Roberts also argues that the ALJ erred in refusing to receive and scan in to the record all of the relevant medical evidence she submitted.  This too, fails to accurately reflect the record.  The documents Roberts attaches to her motion are alternatively already in the record, [*see* R. 19, PgID 737-41, 746, 748-49, 753-58; R. 12-2, Tr. 33-34; R. 12-4, Tr. 93-99; R. 12-7, Tr. 186-87, 486-92], are simply requests for, or releases of, records, [R. 19, PgID 744-745, 747, 750-52, 759], relate to a time period after the ALJ's decision, which means they were not submitted to him, [*see* R. 19, PgID 742-73, 760-64], or relate to J.W.'s 2009 notice of award of SSI benefits [R. 19, PgID 727-36].  The ALJ did not fail to incorporate submitted

evidence into the record.

### B. ALJ Failed to Satisfy Duty to Fully Consider and Develop Record

The Court finds that the ALJ erred by not properly developing the record in this case. "Social Security proceedings are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). In such proceedings, the ALJ has an affirmative duty to develop the factual record upon which his decision rests. *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983) (citing *Richardson v. Perales*, 402 U.S. 389, 410 (1971)). This duty is heightened where the claimant is proceeding without counsel. *Lashley*, 708 F.2d at 1051-52. To satisfy this duty, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* at 1052 (internal citations and quotations omitted).

The record contains a February 2012 medical opinion of state agency, non-examining consultant psychologist, Rose Moten, Ph.D., who, based on limited records from the end of 2011, opined that J.W. had less than marked limitations in the functional domains of attending and completing tasks, interacting and relating with others and caring for yourself, and no limitations in the domains of acquiring and using

9

information, moving about and manipulating objects, and health and physical well-being. [R. 12-3, Tr. 72-73]. At the hearing, presumably because he did not intend to rely on this opinion, the ALJ represented to Roberts that he was going to either obtain an evaluation from J.W.'s treating psychiatrist or, if he could not or was not satisfied with the information received, send J.W. for a consultative examination. [R. 12-2, Tr. 48-49, 60].

    The ALJ did the former and received into the record an evaluation form from J.W.'s treating psychiatrist, Dr. Cecilia Astorga-Switzer. However, the ALJ never mentions this opinion (or the consulting psychologist's opinion) within his skeletal analysis when concluding that J.W. did not meet a listing. [R. 12-7, Tr. 486-92; R. 12-2, Tr. 25]. The form the ALJ provided to Dr. Astorga-Switzer required her to consult various federal regulations in order to obtain explanations and definitions of terms and categories, and properly respond. [R. 12-7, Tr. 486-92]. Dr. Astorga-Switzer partially completed the form, diagnosing J.W. with ADHD and ODD and opining that he had marked limitations in attending and completing tasks, less than marked limitations in acquiring and using information, interacting with others and caring for himself, and no limitations in moving about or manipulating objections. [*Id.*, Tr. 488-89]. She declined to assess

the domain of health and physical well-being, deferring to J.W.'s primary care physician. [*Id.*, Tr. 489]. She also did not complete the portion assessing J.W.'s medical equivalence. [*Id.*, Tr. 486-87]. At the end of the form, Dr. Astorga-Switzer commented, "The questions are very confusing and I do not fully understand the questions to be able to answer them accordingly." [*Id.*, Tr. 491]. In light of this admission and the incompleteness of her opinion, the ALJ had a duty either to seek clarification from Dr. Astorga-Switzer or seek another medical opinion.

That is because, by informing Roberts that he would either obtain an opinion from J.W.'s treating provider with which he was satisfied, or send him for a consultative examination, the ALJ assumed the duty to obtain Dr. Astorga-Switzer's complete and valid opinion in this *pro se* matter, or obtain a consultative opinion, and his failure to do either deprived J.W. of a full and fair hearing. *Strang v. Comm'r of Soc. Sec.*, No. 14-1610, 2015 U.S. App. LEXIS 7586, *25-26; 2015 WL 2056098, *5 (6th Cir. May 4, 2015). "Beyond the normal duty to develop record, an ALJ self-imposes a special duty to obtain records by, as here, frequently noting their importance to the resolution of the claim and committing to obtain them." *Id.* Of further import, "[w]here there are obvious gaps in the record, the ALJ has the duty to develop the administrative record with respect to the missing evidence."

11

*Kendall v. Astrue*, No. CIV.A. 2:10-263-DCR, 2011 WL 4388794, at *5 (E.D. Ky. Sept. 20, 2011). *See also* 20 C.F.R.§ 404.1512(e); 76 FR 20282 and 77 FR 10651 (discussing changes to rule regarding re-contacting treating physicians, effective Marh 26, 2012). The ALJ failure either to seek clarification from Dr. Astorga-Switzer as to her opinion or obtain a consultative examination of J.W. was error.

Moreover, Dr. Astorga-Switzer did not even attempt to opine on J.W.'s medical equivalence, leaving that section blank, and thus there is no current opinion on whether J.W. medically equals a listed impairment. [R. 12-7, Tr. 486-87]. Under the regulations, an ALJ must seek an updated opinion on the issue of medical equivalence where medical evidence is received that may change a consultant's finding that an impairment is not equivalent to a listing. *Courter v. Comm'r of Soc. Sec.*, 479 F. Appx 713, 723 (6th Cir. 2012) (citing SSR 96-6p, 1996 SSR LEXIS 3, at *9-10, 1996 WL 374180 (July 2, 1996)). Here, ample medical evidence after 2011 describes serious symptoms that might have changed the Dr. Moten's finding that J.W. did not have an impairment equivalent to a listing.

Despite the ALJ's opinion characterizing J.W. as generally improving with medication and doing better in school, [R. 12-2, Tr. 23-30], the evidence of record paints an entirely different picture. As of November

12

2011 (his alleged onset date), J.W. was making no progress toward his therapeutic goals even though he was being medicated with Vyvance; his abilities to concentrate, sustain attention and control impulses were decreased and he was not following directions at home or at school. [R. 12-7, Tr. 148-49]. Although Dr. Astorga-Switzer assessed a "good response" to medication in December, J.W. reported to her that he saw the devil in front of his television and in his pencil when asked to practice spelling. [*Id.*, Tr. 143-45]. He was also not sleeping well and Clonidine was added to his regimen. [*Id.*].

Throughout 2012, despite being on Vyvanse and Clonidine, J.W. continued to have behavioral issues both at home and at school. [*Id.*, Tr. 193-201, 354-73, 376-79, 471-76, 482-85, 521-23]. In March 2012, he qualified for special education services, including three to five hours of resource teacher assistance. [*Id.*, Tr. 357, 362]. Despite this, J.W. continued to be disruptive in class, was fidgety, had difficulty listening and concentrating, threw tantrums, stabbed himself with a pencil and was defiant at home. [*Id.*, Tr. 362, 471, 475, 521]. A May 2012 psychosocial assessment (completed by a social worker and reviewed by Dr. Astorga-Switzer), identified marked impairments with family relationships, and extreme impairments related to school, the ability to concentrate, and the

13

ability to control temper. [*Id.*, Tr. 376-89].

An October 2012 CAFAS[2] report identified severe and pervasive impairments in meeting minimal standards at school and at home, including that he required constant monitoring and supervision, and was deliberately damaging household property. [R. 12-7, Tr. 483-85]. The identification of two severe impairments was a "setback" from J.W.'s initial 2011 assessment, which did not identify any severe impairment, and his CAFAS score (which measure dysfunction) increased from 70 to 140 during this period. [*Id.*, Tr. 482-83]. J.W. was assessed with thinking problems and a pervasive behavioral impairment. [*Id.*, Tr. 485]. While J.W. participated in sports, he had been asked not to return to a karate class due to his behavior. [*Id.*, Tr. 471]. Dr. Astorga-Switzer noted in September 2012 that J.W.'s response to medicine was "not optimal" and, at all other relevant times, she found his condition to be either maintaining or deteriorating, but never improving. [*Id.*, Tr. 144, 355, 360, 363, 472, 522]. She issued seven Global Assessment of Functioning ("GAF") scores between J.W.'s onset date and November 2012, all of which were between 47 and 50, indicating serious symptoms. [*Id.*, Tr. 144, 355, 360, 363, 388, 472, 522].[3]

---

[2] "CAFAS" stands for Child and Adolescent Functional Assessment Scale.
[3] The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The

14

By November 2012, J.W. was reportedly engaging in more aggressive activities, including throwing chairs at school and attempting to fight with another child while playing basketball. [*Id.,* Tr. 521]. His mother received two to three calls a week from his school. [*Id.*]. Dr. Astorga-Switzer recommended starting Risperdal, but Roberts declined, although she agreed to add this medicine in January 2013 when it was suggested by another psychiatrist in the practice, Dr. Rajendra Kanneganti. [*Id.,* Tr. 522, 519]. At that time, J.W. was characterized as restless, hyperactive and intrusive into others' activities. [*Id.,* Tr. 516-17]. He was also engaging in aggressive and destructive behavior, shoplifting and stealing, and being cruel to animals. [*Id.*]. Dr. Kanneganti diagnosed him with ADHD, ODD and impulse control disorder, and issued him a GAF score of 45. [*Id.,* Tr. 518].

Given that the longitudinal medical record describes symptoms much more severe than the ALJ's opinion identifies, the Court finds that the ALJ's failure to obtain a supportable medical opinion on J.W.'s medical and

---

GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning." *Norris v. Comm'r of Soc. Sec.*, No. 11-5424, 461 Fed. Appx. 433, 436 n.1 (6th Cir. 2012) (citations omitted). Scores in the range of 61-70 indicate some mild symptoms. *Karger v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 739, 745 (6th Cir. 2011).

functional equivalence, especially in light of his representation to a *pro se* litigant that he would do so, is error requiring remand. More generally, the ALJ's decision that J.W. did not have an impairment or combination of impairments was based only on fragments of the record, [R. 12-2, Tr. 25], and is therefore not supported by substantial evidence. *Garner,* 745 F.2d at 388. On remand, the ALJ should also obtain updated records both from J.W.'s treating providers and from his school, and allow Roberts additional time to obtain counsel if she so wishes.

## IV.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Roberts's Motion for Summary Judgment [R. 19] be **GRANTED**, the Commissioner's Motion [R. 20] be **DENIED** and this case be **REMANDED** for further consideration consistent with this Report and Recommendation.

s/Elizabeth A. Stafford  
ELIZABETH A. STAFFORD  
United States Magistrate Judge

Dated: July 23, 2015

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 23, 2015.

<u>s/Marlena Williams</u>
MARLENA WILLIAMS
Case Manager